IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**vs.**                                                                                                          **No. CR 05-1485 MV**

**JOE CRUZ,**

    **Defendant.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the court on Defendant Joe Cruz's Motion to Dismiss [Doc. No. 14], filed June 21, 2006. The court, having considered the motion, briefs and relevant law, and having conducted hearings on the motion on November 8 and 17, 2006, and being otherwise fully informed, **DENIES** the Motion to Dismiss as stated at the hearing on this matter. This Memorandum Opinion sets forth the bases for the court's decision.

### I. Statement of Issues

Defendant argues for dismissal of the indictment on four grounds: 1) the Interstate Agreement on Detainer Act; 2) the Speedy Trial Act, 18 U.S.C. §§ 3161 - 3174; 3) the Sixth Amendment; and 4) Rule 48(b) of the Federal Rules of Criminal Procedure.

### II. Background

On January 12, 2005, Defendant was arrested by the Albuquerque Police Department following a traffic stop. At the time of his arrest, Defendant had pending state court felony charges for which he had been released on bond. As a result of Defendant's arrest, his bond was revoked and he was held in state custody pending trial. Following Defendant's conviction on the state charges, he was transported to the New Mexico Department of Corrections, Lea County Correctional Facility

("LCCF") to serve his sentence.

On July 12, 2005, Defendant was indicted in the United States District Court for the District of New Mexico on the present felon in possession charge pursuant to 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). An arrest warrant for Defendant was issued the following day on July 13, 2005. Almost three months later, on October 6, 2005, the U.S. Marshal's Service delivered a Federal Detainer Notice to LCCF. The next day, on October 7, 2005, Defendant executed the detainer agreement demanding a speedy trial ("Detainer"). (Motion to Dismiss Ex. A). Defendant gave the signed Detainer to K. Moore, a classification officer at LCCF. Subsequently, on or about October 7, 2005, LCCF returned a signed copy of the Detainer to the U.S. Marshal Service; who then faxed a courtesy copy of the signed Detainer to Assistant U.S. Attorney David Walsh. (Response at 2.) Defendant did not deliver written notice to the U.S. Attorney's office or this court.

No further action was taken on this matter until April 20, 2006, when this court issued a writ ordering Defendant to appear for arraignment on May 3, 2006. On May 2, 2006, Defendant was arrested on his federal warrant and taken into federal custody, where he remains while the current charges are pending.

### III.  Discussion

Defendant claims his right to a speedy trial has been violated as a result of the long delay between his indictment and arraignment, particularly following his demand for a speedy trial in October of 2005. Defendant claims the government's conduct violates the Interstate Agreement on Detainers Act ("IADA") and is contrary to the "spirit and intent" of the federal Speedy Trial Act and the Sixth Amendment. Defendant claims he has been prejudiced as a result of the delay, and requests this court dismiss the charges against him with prejudice pursuant the provisions of the IADA, the

Speedy Trial Act and the Sixth Amendment. Alternatively, Defendant claims this Court should exercise its discretion and dismiss the indictment with prejudice pursuant to Rule 48(b).

### A.     Interstate Agreement on Detainers Act ("IADA")

The IADA is an agreement entered into by the States and the United States of America to "encourage the expeditious and orderly disposition" of "charges outstanding against a prisoner" and the "determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." 18 U.S.C. App. 2, § 2, Art. I. The IADA is also intended "to provide cooperative procedures" between the jurisdictions with regard to charges emanating from another jurisdiction. *Id.*

Under the IADA, a prisoner is entitled to be brought to trial within 180 days after delivering notice of his or her request for a final disposition on the charges pending against him or her to the prosecutor's office and the appropriate court. Section 2, Article III of the IADA states, in relevant part, the following:

> (a)     Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information or complaint, on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty [180] days after *he shall have caused to be delivered to the prosecuting officer and the appropriate court* of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint.

(Emphasis added). Additionally, Article V(c) of the IADA provides:

> In the event that an action on the Indictment, Information, or Complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided for in Article 3. . . the appropriate court of jurisdiction where the Indictment, Information, or Complaint has been pending shall enter an order dismissing the same with prejudice and any detainer based there on shall cease to be

of any force or effect.

18 U.S.C. App. § 2, Art. V(c).

Defendant argues his right to be brought to trial within 180 days pursuant to the IADA has been violated because it has been more than 180 days since he executed the Detainer demanding a speedy trial. Defendant argues that once he signed the Detainer and delivered it to the prison official, his obligation had been fulfilled, and the duty then rested on the government to "make certain a defendant's constitutional rights are not violated." (Motion to Dismiss at 6.) In support of his argument, Defendant cites two cases that have since been overruled, *United States v. Reed*, 910 F.2d 621, 626 (9th Cir. 1990) and *United States v. Smith*, 696 F.Supp. 1381 (D. Ore. 1988). Both *Reed* and *Smith* held that once the prisoner delivered the demand for a speedy trial to the warden or other prison official, the IADA 180-day clock began to run.

However, as noted by the government, these cases were expressly overruled by *Fex v. Michigan*, 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). The *Fex* court ruled that the 180-day IADA time period "did not commence until the prisoner's request for final disposition of the charges against him were *actually* delivered to the trial court and prosecuting officer of the jurisdiction that lodged the detainer against him." 507 U.S. at 52 (emphasis added). The *Fex* court made clear that delivery to the court and prosecutor is "the critical event." *Id.* at 43; *see also United States v. Martinez*, 376 F.Supp.2d 1168, 1173 (D.N.M. 2004) (following *Fex*, held actual notice to both court and prosecutor of demand for speedy trial began IADA clock).

In this case, Defendant delivered the Detainer to a prison official, who then faxed a copy to the U.S. Marshal's office. According to the government, Assistant U.S. Attorney David Walsh received a faxed copy from the U.S. Marshal's office on or about October 7, 2005. Consequently,

the prosecutor admits having actual notice on or about October 7, 2005. (Nov. 8, 2006, Hrg. Tr. at 30.) However, Defendant never delivered a copy of the Detainer or other demand for speedy trial to this court. Under the strict construction of the IADA adopted by the Supreme Court, Defendant's failure to notify this court of his demand for a speedy trial kept the 180-day IADA clock from commencing. *See Martinez*, 376 F.Supp.2d at 1174; *see also United States v. Paredes-Batista*, 140 F.3d 367, 374-75 (2d Cir. 1998) (request for speedy trial not effective until delivered to both prosecutor and court). Therefore, Defendant's argument for dismissal under the IADA is without merit. *See Fex*, 507 U.S. at 52.

### B.     Speedy Trial Act

The dual purpose of the Speedy Trial Act, 18 U.S.C. §§ 3161 - 3174, is to "protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings." *United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993) (citation omitted). The Act requires an indictment or information be filed within 30 days of the date the defendant was arrested or served with a summons in connection with the charges at issue. 18 U.S.C. § 3161(b). The Act also requires the trial commence within 70 days of the date of the filing of the indictment or from the date the defendant first appears before a judicial officer of the court, whichever is later. *See* 18 U.S.C. § 3161(c)(1). A violation of either of these provisions requires dismissal of the charges with or without prejudice. 18 U.S.C. § 3162. However, dismissal is *not* an available sanction for a delay between the filing of an indictment and service of a detainer under the Act. *See* 18 U.S.C. § 3161(j)(1); *see also United States v. Torres-Centeno*, No. 99-4137, 2000 U.S.App. LEXIS 6750 *7 (10th Cir. April 12, 2000) (unpublished decision) (citations omitted).

Defendant claims he is entitled to dismissal of the indictment in accordance with the "spirit

and intent" of the Speedy Trial Act. (Motion to Dismiss at 3.) He argues the "three month delay in STA detainer notice deprived him of his opportunity to assert a fundamental constitutional right and to have that request heard at a meaningful time." Defendant points out that the delay between his state arrest and his federal indictment was greater than 30 days. (Motion to Dismiss at 4.) He argues that this delay is analogous to the delay sanctioned by 18 U.S.C. § 3161(b), and thus warrants dismissal.

However, there is no violation of § 3161(b) because the indictment *preceded* Defendant's federal arrest. The purpose of § 3161(b) is to protect defendants from being arrested, and possibly held in custody, without charge. Here, at the time of Defendant's federal arrest, he was already in state custody on a revoked bond. Defendant argues, however, that the state arrest is what led to the present federal charges. Therefore, Defendant claims it is the state arrest, not the federal arrest, that should be considered. Defendant correctly "acknowledges that the Speedy Trial Act does not address this precise situation" and cites no case in support of this argument. (Motion to Dismiss at 7.)

Defendant's analogy of the facts in this case to § 3161(b) does not work. First, the federal Speedy Trial Act applies to federal cases, and thus federal arrests. The state arrest does not trigger federal responsibility. Second, § 3161(b) applies in cases where the arrest occurred *first*, then the indictment or information, contrary to the present case. Finally, the courts interpret each provision of the Speedy Trial Act literally. *See, e.g., United States v. Henderson*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986); *see generally Torres-Centeno, supra.* The Act expressly limits § 3161(b) to indictments filed "in connection with" the charges upon which the defendant was arrested. Here, Defendant's state arrest in January of 2005, was for altering an identification card; while the federal indictment at issue charges Defendant with being a felon in possession of a weapon.

6

Consequently, Defendant's argument for dismissal under § 3161(b) is without merit.

Defendant also argues dismissal should be granted consistent with the "spirit" of § 3161(j)(1) based upon the almost three-month delay between the filing of the indictment on July 12, 2005, and the delivery of the notice of detainer to him on October 6, 2005.  However, as observed in *Torres-Centeno, supra*, "every circuit that has addressed this issue has held that dismissal is not an available remedy for a violation of § 3161(j)(1)."  *See, e.g., Paredes-Batisa,* 140 F.3d at 375; *United States v. Guzman*, 85 F.3d 823, 829 n.4 (1st Cir. 1996); *United States v. Anderton*, 752 F.2d 1005, 1007-08 (5th Cir. 1985).  Additionally, the delay in this case of almost three months, while unexplained, is not considered substantial.  *See, e.g., Anderton,*752 F.2d at 1007-08 (delay of more than 15 months between indictment and arraignment did not violate § 3161(j)); *United States v. Cone*, No. 04-CR-168-HDC, 2006 U.S.Dist. LEXIS 36761 (D. Okla. June 5, 2006) (three-month delay between filing indictment and filing detainer is sufficiently prompt for purposes of § 3161(j)).  Finally, Defendant has not shown an actual violation of the Speedy Trial Act.  Defendant's argument that the spirit of the Act has been violated is not sufficient to warrant dismissal.  *See Henderson, supra* (strictly construing provisions of the Act).  Consequently, dismissal of the indictment is not appropriate under § 3161(j)(1) or § 3162 of the Speedy Trial Act.

### C. Sixth Amendment

In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court established a four-part balancing test to determine whether a defendant's Sixth Amendment rights have been violated.  Courts should consider: 1) the length of the delay; 2) the reason or reasons for the delay; 3) the defendant's assertion of his rights; and 4) the prejudice to the defendant.  407 U.S. at 530.  The "threshold factor to consider is the length of delay."  *United States v. Lugo*, 170 F.3d

7

996, 1002 (10th Cir. 1999). Courts "need only inquire into the other factors if the period of delay is "presumptively prejudicial." *Id.* Courts have generally found post-accusation delay of one year presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (citations omitted); *see also United States v. Gomez*, 67 F.3d 1515 (10th Cir. 1995) (12 ½ month delay triggers *Barker* analysis); *Perez v. Sullivan*, 793 F.2d 249, 255 (10th Cir. 1986) (15-month delay triggers *Barker* analysis). Additionally, the delay must not be "purposeful or oppressive," otherwise dismissal with prejudice is warranted. *Perez*, 793 F.2d at 255 (quoting *Pollard v. United States*, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957)).

In this case, Defendant was indicted over a year ago on July 12, 2005, consequently the delay is presumptively prejudice. *See Gomez, supra; Perez, supra.* At the hearing on this matter, the government explained that the reason for its delay was an inadvertent mistake made by the prosecuting attorney, David Walsh. (Nov. 8, 2006, Hrg. Tr. at 30-33.) Mr. Walsh stated that his office received a copy of the Detainer in October of 2005; however, it was placed in Defendant's file without coming to his attention. Mr. Walsh said a telephone call from Defendant's sister in April of 2006, prompted him to review Defendant's file, which brought the Detainer to his attention for the first time. At that point, the government took prompt action to issue a writ to bring Defendant before this court. Mr. Walsh admits it was an error on his part, but was not intentional. This explanation does not account for the almost three-month delay from the filing of the indictment until the Detainer was issued. However, as discussed above, this three-month period of time alone is not unreasonably long. *See, e.g., Cone, supra.* Furthermore, Defendant does not argue the delay was malicious or present any evidence to support a finding that the delay was the result of purposeful or oppressive conduct by the government. Therefore, the court finds that the delay resulting from the government's

8

conduct was not purposeful or oppressive.  *See Perez*, 793 F.2d at 255.

Additionally, from May of 2006, until the hearing on this matter, the delays occurring in this case have predominantly been the result of Defendant's own actions.  Defendant filed three motions to continue deadlines; two motions to continue the trial; and a motion to suppress in addition to the present motion.  *See Lugo*, 170 F.3d at 1002 (delays caused by Defendant's own motion to suppress do not violate his Sixth Amendment right to a speedy trial); *Rashad v. Walsh*, 300 F.3d 27, 42 (1st Cir. 2002) (presumption of prejudice less appropriate when defendant takes affirmative steps to delay his trial).

Regarding the third *Barker* factor, Defendant asserted his right to a speedy trial when he executed the Detainer on October 7, 2005.  Neither Defendant, nor anyone on his behalf, notified this court about Defendant's assertion of his right.  Approximately three months later, on January 10, 2006, Defendant allegedly "wrote to 333 Lomas Blvd. NW– Albuq. N.M.– 87102 and requested help on [his] detainer."  (Reply Ex. A.)  The address stated is the location of the U.S. federal courthouse in Albuquerque, New Mexico, which houses many offices and divisions of the federal government, including the U.S. Marshal's office.  Defendant did not submit a copy of the letter.  Moreover, there is no evidence concerning the intended recipient of the letter, nor any that such letter was received.

In March of 2006, Defendant said he spoke with his present counsel, Judith Rosenstein, who allegedly advised him to call her back if he had not been picked up on the detainer within 180 days. (Reply Ex. A; *but see Saltzman*, 984 F.2d at 1094 ("A defendant who waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention." (citation omitted))).  Defendant also claims in March of 2006, he called Special Agent Timothy King's office and spoke with Wilma Bright.  According to Defendant, Ms.

9

Bright informed him that Mr. King had his file on his desk. Finally, Defendant claims at some point his sister spoke with Assistant U.S. Attorney, David Walsh, Mr. King and Ms. Rosenstein. (Reply Ex. A.) He did not provide dates for these alleged conversations. However, Mr. Walsh admits receiving a telephone message from Defendant's sister in April of 2006, which prompted him to proceed with obtaining a writ for Defendant's appearance. (Nov. 8, 2006, Hrg. Tr. at 31.)

The court finds that Defendant asserted his right to a speedy trial in October of 2005, and made additional efforts to proceed toward trial in about March or April of 2006. The court recognizes the limitations on Defendant's ability to pursue his rights from prison; and finds his efforts are a sufficient assertion of his Sixth Amendment right to receive a speedy trial.

Finally, the court must examine the prejudice to Defendant resulting from the delays. Defendant has the burden of proving actual prejudice, not mere speculation. *See United State v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Perez*, 793 F.3d at 257 ("speculative allegations of injury are unpersuasive"). Prejudice is assessed primarily by considering three interests the right to a speedy trial is designed to protect:  1) preventing oppressive pretrial incarceration; 2) minimizing the defendant's anxiety and concern; and 3) limiting the possibility that the defense will be impaired. *See Barker*, 407 U.S. at 532; *Perez*, 793 F.2d at 256 (citations omitted).

In this case, Defendant claims he has been prejudiced by the loss of witness testimony. In his motion, Defendant asserts that at the time he was arrested on the state charge, he knew the whereabouts of David Salinas, a passenger in the vehicle at the time of the stop. Yet at the time he filed the present motion, he no longer knew where to find him. (Motion to Dismiss at 9.) However, this issue was rendered moot when Mr. Salinas was located in Colorado and appeared to testify at the hearing on Defendant's Motion to Suppress on November 17, 2006. (Nov. 17, 2006, Hrg. Tr.

at 17.)

Additionally, at the hearing on this motion, Defendant argued he has been prejudiced as a result of the lost belt tape. (Nov. 8, 2006, Hrg. Tr. at 18, 39; Nov. 17, 2006, Hrg. Tr. at 5, 7.) However, other than Officer Jose Carrasco's questionable testimony at Defendant's state court bond hearing, there is no evidence that the belt tape actually existed. Nevertheless, even if it did exist, it appears to have gone missing almost immediately since it was never tagged into evidence. (Nov. 17, 2006, Hrg. Tr. at 7, 11.) In fact, all of the evidence concerning the belt tape is mere speculation. Consequently, Defendant fails to show the delay in bringing him to trial resulted in the loss of the alleged belt tape; or that the tape would actually assist his defense. *See Perez*, 793 F.2d at 257 ("Speculative allegations of injury are unpersuasive." (citations omitted)); *cf. United States v. Martinez*, 776 F.2d 1481, 1483 (10th Cir. 1985) (defendant obligated to show with reasonable particularity how missing evidence would help his case and when it went missing).

Finally, Defendant claims he was prejudiced as a result of being removed from state custody where he participated in multiple rehabilitative programs and received good time credit. (Motion to Dismiss at 11-12.) This argument makes no sense. The delay from the date of the indictment, July 12, 2005, until Defendant's arrest on May 2, 2006, enabled Defendant to remain in state custody where he presumably continued to participate in rehabilitative programs and receive good time credit. Thus, the delay in this instance actually benefitted Defendant. Furthermore, even if Defendant had moved swiftly to trial, he would have lost these benefits. These are losses resulting from the indictment, not the delay, and thus they are not a basis for dismissal. Consequently, Defendant has failed to show actual prejudice resulting from the delay in bringing him into federal custody. *See Perez*, 793 F.2d at 257 n.10 ("There must be some showing of a causal connection between delay and

the prejudice claimed." (citation omitted)).

Having examined each of the *Barker* factors as well as the three principal interests the right to a speedy trial seeks to protect, the court finds that dismissal is not warranted. Defendant has not shown his defense has been impaired as a result of the delay or any other actual prejudice. *See Perez*, 793 F.2d at 256 (courts are reluctant to find speedy trial deprivation where there is no prejudice (citations omitted)). Additionally, Defendant has not shown that he suffered from oppressive pretrial incarceration. During the period in which this matter was delayed, Defendant was in custody serving a state sentence; and therefore spent no additional time in custody as a result of the current charge. Finally, the evidence does not show that Defendant experienced excessive anxiety or concern as a result of the delay. Consequently, dismissal of the indictment is not appropriate under the Sixth Amendment.

### D.     Rule 48(b)

Lastly, Defendant argues the court should exercise its discretion and dismiss the indictment with prejudice under Rule 48(b) of the Federal Rules of Criminal Procedure. Rule 48(b)(3) authorizes dismissal of an indictment, information, or complaint "if unnecessary delay occurs in. . . bringing a defendant to trial." The Supreme court has held that Rule 48(b) applies only to post-arrest delay. *Marion*, 404 U.S. at 319; *see also United States v. Kalady*, 941 F.2d 1090, 1094 (10th Cir. 1991) (citations omitted). Furthermore a defendant has the burden of showing prejudice as a result of the delay. *See United States v. Martinez*, 776 F.2d at 1483.

In this case, the delay complained of by Defendant occurred prior to his arrest on May 2, 2006. Rule 48(b) does not apply to this period of delay. *See Marion, supra.* Furthermore, the delay following his arrest until the hearing on this matter was largely the result of Defendant's own action.

Finally, as discussed above, Defendant has not shown any actual prejudice resulting from the delay. Consequently, this court finds that dismissal is not appropriate under Rule 48(b).

**IT IS THEREFORE ORDERED THAT** Defendant Joe Cruz's Motion to Dismiss [Doc. No. 14] is hereby **DENIED.**

Dated this 21st day of March, 2007.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
David M. Walsh

Attorney for Defendant:
Judith Rosenstein